**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

Taylor M.,

Claimant,

v.

FRANK BISIGNANO,
*Commissioner of Social Security*,

Respondent.

Case No. 2:25-cv-342

**OPINION & ORDER**

In this Social Security appeal, Claimant Taylor M. seeks review of an Administrative Law Judge's decision denying her claim for disability benefits. The Court referred the case to the Honorable Douglas E. Miller, United States Magistrate Judge, for a report and recommendation (R&R). ECF No. 7 (referral), 17 (R&R). Judge Miller found no error in the ALJ's assessment of the evidence and recommended that the Court affirm the Commissioner's final decision. ECF No. 17 at 1. The claimant objected to the R&R. ECF No. 18. Because a *de novo* review reveals that substantial evidence supports the ALJ's decision, the Court will overrule the claimant's objections, adopt the R&R, and affirm the Commissioner's decision.

## I. BACKGROUND

The claimant filed an application for disability benefits on May 7, 2021, and alleged her disability began on October 20, 2020. ECF No. 6 at 184–94. The application was denied both initially and upon reconsideration. *Id.* at 66, 76. Thereafter, the claimant sought review before ALJ Carol Matula, who denied the

claim. *Id.* at 14–33. The ALJ found that the claimant was not disabled during the relevant period, as her residual functional capacity (RFC) enabled her to perform light work within the national economy. *Id.* at 22–29. The Appeals Council denied review of the ALJ's decision. *Id.* at 1–6.

## II. LEGAL STANDARD

When a party files a written objection to a magistrate judge's report and recommendation, the district court must determine *de novo* "those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A federal court will "uphold a Social Security disability determination if (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); *see* 42 U.S.C. § 405(g) (statutory authority for judicial review). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation marks and citation omitted). Because ALJs, as the "front-line decisionmakers," "are best positioned to decide which pieces of evidence are persuasive and which pieces of evidence are not," it is only necessary that "more than a mere scintilla" of evidence supports the determination, which is not a high threshold. *Drumgold v. Comm'r of Soc. Sec.*, 144 F. 4th 596, 604 (4th Cir. 2025) (quotation marks and citation omitted).

"In reviewing for substantial evidence, [courts] do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [their] judgment for the ALJ's. Yet even under this deferential standard, [courts] do not reflexively rubber-stamp an ALJ's findings. To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quotation marks and citations omitted).

When reviewing an ALJ's determination, the district court reads the decision "as a whole." *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (unpublished); *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (unpublished). If the court can "understand what the ALJ did and why [they] did it," then the ALJ has fulfilled their duty of explanation under the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A). *Lane Hollow Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998). "Meaningful review is frustrated—and remand [is] necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (unpublished) (quotation marks omitted).

This case focuses on the ALJ's residual functional capacity (RFC) determination between step three and step four of the Social Security benefits assessment. *See Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (describing the steps). RFC is "'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)); *see* SSR 96-8p. A claimant's RFC is assessed "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). The ALJ is required

to consider "all of [the claimant's] physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). The ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts [ ] and nonmedical evidence [ ]." SSR 96-8p. But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [their] decision." *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2020) (quotation marks and citation omitted). Rather, the ALJ may base the RFC assessment on the record as a whole. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (unpublished).

## III. ANALYSIS

The claimant raises two objections to the R&R, both of which pertain to the ALJ's determination that the claimant has the RFC to perform light work. First, the claimant contends that Judge Miller erroneously interpreted and applied *Drumgold*, 144 F.4th 596 (4th Cir. 2025), to the facts of her case in concluding that substantial evidence supported the ALJ's RFC determination. ECF No. 18 at 1–3. Second, the claimant argues that the R&R incorrectly concluded that the ALJ had no obligation to order a mental consultative examination to further develop the factual record before making an RFC determination. *Id.* at 3–5. Both objections fail.

### A. Interpretation & Application of *Drumgold*

The R&R concludes that the ALJ "appropriately considered and evaluated all the medical evidence in the record," in part because "[t]he ALJ, as the trier of fact, is responsible for resolving conflicting medical evidence." ECF No. 17 at 25 (citing

*Drumgold*, 144 F.4th at 605). However, the claimant argues that *Drumgold* requires reviewing courts to ask not only "whether the ALJ examined all relevant evidence," but also whether the ALJ "offered a sufficient rationale in crediting certain evidence and discrediting other evidence"—and she asserts that the ALJ did not comply with the latter requirement. 144 F. 4th at 605; ECF No. 18 at 1–2.

The claimant is correct that an ALJ's RFC determination must be accompanied by a sufficient explanation. *Lane Hollow Coal Co.*, 137 F.3d at 803. This is because "appellate *re*view is possible only when [the ALJ] has first articulated a *view*," and "[m]issing analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Drumgold*, 144 F.4th at 605 (citation and quotation marks omitted). Therefore, an ALJ must provide a rationale that "build[s] an accurate and logical bridge from the evidence to their conclusions." *Id.* (citation omitted). In other words, the ALJ's explanation must allow a reviewing court to "understand what the ALJ did and why [they] did it." *Lane Hollow Coal Co.*, 137 F.3d at 803. And when an ALJ must resolve conflicting medical evidence in reaching a determination, the explanation must include their rationale for crediting certain evidence and discrediting other evidence. *Drumgold*, 144 F.4th at 605.

The claimant contends that the ALJ's RFC determination ran afoul of the *Drumgold* standard because the ALJ failed to adequately explain how she arrived at a light RFC. ECF No. 18 at 1–3; ECF No. 13 at 14–20. The claimant argues that the ALJ's explanation arbitrarily credited "insufficiently representative or cherry-picked" evidence in the record and did not "duly discuss issues with that evidence." ECF No. 18 at 2–3. Specifically, she argues that the ALJ relied on limited examinations that

merely "showed that a visual overview of all four extremities was normal" or focused on matters that were "irrelevant to the issue of chronic body pain." ECF No. 13 at 16; ECF No. 18 at 2. And the claimant contends that the ALJ simultaneously failed to address "more clearly[]relevant" contrary evidence and incorporate it into the RFC analysis. ECF No. 18 at 2.

The claimant maintains that the generally normal physical examination findings the ALJ cited are problematic in part because the visits were focused on unrelated maladies. ECF No. 18 at 2. However, there is no requirement that an ALJ rely only on records directly pertaining to treatment of the claimant's medically determinable impairments. It is only necessary that the evidence be relevant. *See* 20 C.F.R. § 416.945(a)(1) (requiring an ALJ to assess a claimant's RFC "based on all the relevant evidence" in the record). Here, examination findings regarding the claimant's muscle strength, gait, and range of motion were directly relevant to the claimant's musculoskeletal conditions, which include hypermobility syndrome and lumbar degenerative changes. ECF No. 6 at 23–24 (citing *id.* at 464, 768, 969). Likewise, neurological examination findings—including normal attention and fund of knowledge without memory deficits—are clearly relevant to the level of impairment caused by the claimant's migraines. *Id.* at 25 (citing *id.* at 289). And notably, that examination was conducted by a provider evaluating the claimant's headaches. *Id.* at 289.

Importantly, this was but a small fraction of the medical evidence the ALJ discussed; as the R&R correctly observed, the ALJ "thoroughly summarized the medical evidence" relevant to the claimant's impairments, including the claimant's

subjective complaints of pain, in explaining how she reached an RFC determination. ECF No. 17 at 24; *see* ECF No. 6 at 22–28. Of particular note, the ALJ acknowledged the claimant's testimony that she experiences pain in her back, spine, hands, and hip, ECF No. 6 at 22, the claimant's complaints of neck and lower spine pain to her treating providers, *id.* at 23–24, chronic-pain-related diagnoses, *id.* at 24, and medications for pain management, *id.* at 22, 24. And the ALJ explicitly factored the claimant's "ongoing pain" into the RFC determination. *Id.* at 25.

But the ALJ also considered—as she was required to do—the claimant's "objective testing, fairly normal examination notes, . . . and [the] very conservative treatment" that the claimant received for her conditions. ECF No. 6 at 25. And the ALJ's finding that the claimant had generally normal physical examinations and was treated conservatively—such as with physical therapy, NSAIDS, steroid injections, and Cymbalta—is amply borne out in the record. *See, e.g., id.* at 447–48, 548–49, 605, 607, 674, 678, 680, 686, 688, 690, 692, 751, 768, 772, 965–66, 969, 980, 993, 995.

These findings are not contradicted by the allegedly "more clearly relevant" evidence cited by the claimant, the bulk of which relates to the claimant's subjective reports of pain and response to medications as reported to her providers.[1] Moreover, the ALJ did acknowledge the vast majority of this so-called "more clearly relevant"

---

[1] *Id.* at 411, 870–71 (left knee and spinal imaging impressions); *id.* at 604, 606–08 (physical therapy plan of care to address claimant's reports of neck and lower back pain); *id.* at 615 (physical therapy progress note with objective findings regarding claimant's reported back pain); *id.* at 728, 734 (osteopathic medicine follow-up notes indicating claimant's report of new hip pain with evidence of joint effusion); *id.* at 929 (behavioral health visit notes stating claimant reported injections for back pain offered little relief); *id.* at 996 (PCP visit note indicating claimant reported that ablation for chronic back pain was ineffective).

evidence and factored it into her analysis.[2] Indeed, after recognizing the plaintiff's reports of "ongoing pain" and "multiple objective tests" showing a spine disorder, left hip bursitis, dislocations of her knees, and hypermobility in her hands, the ALJ rejected state agency consultant opinions finding the claimant could perform medium exertional work, and instead provided for a light work RFC with occasional postural activity. *Id.* at 25, 27–28.

Accordingly, the claimant's contention that the ALJ's explanation arbitrarily relied on cherry-picked evidence while failing to credit more relevant evidence is without merit.[3] Based on a *de novo* review, the Court concludes that the ALJ evaluated the claimant's RFC in accordance with the applicable law, and her explanation built an accurate and logical bridge from the evidence to her light RFC determination such that the determination is supported by substantial evidence.

---

[2] *See id.* at 23–24 (citing *id.* at 547–48 (duplicative spinal imaging results), 604–607, 678 (claimant reported 50% improvement in back pain following ablation), 703 (claimant reported that lumbar medial branch blocks—i.e., spinal injections—did not result in significant improvement), 728, 734).

[3] The claimant appears to assume that medical evidence the ALJ relied upon was "credited" while evidence the ALJ did not rely upon in the way that the claimant would like it to be was "discredited" by the ALJ. Not so. An ALJ is not required to discuss every piece of evidence in the record in arriving at a determination, *Berryhill*, 916 F.3d at 312, and mere failure to cite a specific piece of evidence (or to cite it in the way that the claimant would prefer) is not an indication that the evidence was discredited. The ALJ was only required to support her determination with more than a mere scintilla of evidence such that the Court can determine from the opinion "what the ALJ did and why [they] did it," *Lane Hollow Coal Co.*, 137 F.3d at 803.

The claimant's objection instead amounts to disagreement with the ALJ's assessment of the evidence and her ultimate conclusion that the claimant can perform light work with limitations. The Court is not permitted to reweigh the evidence or make factual findings. Those functions lie within the exclusive province of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Evidentiary Sufficiency of RFC Determination

The claimant next objects to the R&R's conclusion that the ALJ properly developed the record and was not required to order a mental consultative examination before making an RFC determination. ECF No. 18 at 3–5. But because there was sufficient evidence in the record upon which the ALJ could base her RFC determination, the ALJ was not required to arrange for a consultative examination.

Typically, the claimant is responsible for providing the evidence needed to make the RFC determination. 20 C.F.R. § 416.945(a)(3). Whether to order a consultative examination is a decision generally left to the ALJ's discretion, *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (unpublished); however, the ALJ has a duty to order a consultative examination when the record lacks sufficient evidence to permit the ALJ to reach an informed disability determination. 20 C.F.R. § 416.945(a)(3) (The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary."); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted) (The ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."); 20 C.F.R. § 404.1519a(a) ("If [the ALJ] cannot get the information [they] need from [the claimant's medical sources], [the ALJ] may decide to purchase a consultative examination."); 20 C.F.R. § 404.1519a(b) (The ALJ may arrange for a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination."). Therefore, the question is whether there was

sufficient evidence in the record for the ALJ to make an informed determination regarding the claimant's mental health impairments without ordering a consultative examination. *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *3 (4th Cir. 1998) (unpublished).

Here, the ALJ had sufficient medical evidence to make an informed determination about the claimant's mental impairments. As the R&R correctly noted, the ALJ's narrative discussion relied on multiple mental status examinations and treatment notes during the relevant period. ECF No. 6 at 25–27 (citing, e.g., *id.* at 297–301, 507–25, 526, 921, 925, 933, 957, 961). Although the claimant argues that the ALJ did not have a fully developed record because the last mental status examination was in January 2022, the claimant cites no authority in support of the proposition that mental status examinations—as opposed to ongoing, relatively detailed, and plentiful treatment notes—are required.

To the contrary, the ALJ was required to consider all relevant evidence in the record in reaching an RFC determination, which included evidence of the effects of medication on the claimant's mental health symptoms. 20 C.F.R. § 416.945(a)(1). Consistent with that requirement, the ALJ referred to ample treatment notes spanning the entire relevant period that discussed the ameliorative effects of medication on the claimant' symptoms—specifically, that medications improved the claimant's focus and sleep while decreasing her level of anxiety, pain, stress, depression, and feelings of overwhelm. ECF No. 6 at 26–27.

The claimant contends that "general improvements [in symptoms] are not evidence of improvement establishing a non-disabling RFC." ECF No. 18 at 4. That

argument is not persuasive, as evidence of ongoing and consistent improvement in symptoms is directly relevant to whether a condition is disabling. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Here, the ALJ cited substantial evidence in support of the determination that the severity of symptoms was not disabling and allowed for light work.

There is likewise no merit to the claimant's assertion that a single line on a single page of the voluminous medical record—stating that the claimant continued to have difficulty managing important responsibilities and daily tasks—created an unresolved issue necessitating a mental consultative examination. ECF No. 18 at 4 (citing ECF No. 6 at 957). The ALJ cited this page in the record, and although she did not specifically discuss the particular line, she later acknowledged potential limitations on improvement in the claimant's mental health conditions despite medication management because her unhealthy living environment—a contributor to her conditions—did not change. ECF No. 6 at 27.

The claimant cites *Denise B. v. O'Malley*, No. 2:23-cv-114, 2024 WL 3103317, at *4–5 (E.D. Va. June 24, 2024), in support of her contention that the ALJ's finding of improved symptoms on medication was underdeveloped. ECF No. 18 at 4–5. But *Denise B.* is clearly distinguishable from this case. In *Denise B.*, the ALJ concluded that treatment notes did not support the medical opinion of two of the claimant's providers, in part due to evidence that the claimant's condition was controlled with medication. *Denise B.*, 2024 WL 3103317, at *4–5. The ALJ "only cited one relevant treatment record" by one of the providers, even though there were several other

records from visits with both providers discussing the claimant's pain and medication management. *Id.* The district court found that the ALJ's explanation failed to build a "logical bridge" between his supportability analysis and conclusion that the provider's opinion was unpersuasive, and "improperly left the Magistrate Judge to 'reverse-engineer' his reasoning." *Id.* at *5.

That is not the case here, where the claimant has not objected to the ALJ's evaluation of opinion evidence, and where the ALJ had—and cited to—sufficient evidence to evaluate the claimant's mental impairments, including improvement of symptoms on various medications, to arrive at an RFC determination.

Next, although the claimant asks this Court to "remand the matter as done in" *Donnie K. v. O'Malley*, 1:24-cv-135, 2025 WL 641433 (E.D. Va. Feb. 26, 2025), that case is likewise inapposite. There, the ALJ "impermissibly assessed [the claimant's] mental RFC based on his own interpretation of the raw data and without the benefit of a medical opinion or data that expressed [the claimant's] limitations in *functional* terms." *Id.* at *12. But here, the ALJ referred to state agency psychological opinions that expressed the claimant's mental limitations in functional terms. ECF No. 6 at 27 (*citing id.* at 67–75, 77–87). To the extent the ALJ applied his own "abilities as a lay person" in interpreting the record and departing from expert opinions, she did so to the claimant's benefit. *Donnie K.*, 2025 WL 641433, at *12. Although the psychological opinions evaluated the claimant to have a medium RFC, the ALJ provided for greater limits to give the claimant "the widest latitude" with respect to her stress and anxiety, as well as her reports about difficulty interacting with others. ECF No. 6 at 27, 73–75, 84–86.

Finally, the claimant takes issue with the ALJ's erroneous finding that the claimant did not report any special education classes,[4] arguing that the ALJ's "underdeveloped assessment as to the sufficiency of the mental health evidence is only heightened by [the ALJ's] misunderstanding of [the claimant's] pre-disability level of ability." ECF No. 18 at 5. As the Commissioner concedes, the record indicates that the claimant reported she required individualized education plans beginning in elementary school, and that she participated in specialized job training in high school. ECF No. 15 at 27 n.3; ECF No. 6 at 211. But the ALJ's misstatement about the claimant's educational history does not render the ALJ's well-reasoned assessment of the claimant's mental impairments during the relevant period—or her ultimate RFC determination—erroneous. The ALJ appears to have afforded the claimant's educational history little to no weight in arriving at the light work RFC. Moreover, that the claimant had IEPs does not cast into doubt the ALJ's reasoning in reaching the RFC determination. The misstatement is therefore harmless error that does not warrant remand. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (citation and quotation marks omitted).

Having reviewed the claimant's objections to the R&R, the Court finds that the ALJ applied the correct legal standards, and her factual findings are supported by

[4] The ALJ made this finding when conducting the equivalency analysis at step 3. ECF No. 6 at 21.

substantial evidence in the record. Accordingly, the ALJ's decision finding the claimant not disabled will be affirmed.

## IV. CONCLUSION

Based upon a *de novo* review of the issues to which claimant Taylor M. objected, the objections (ECF No. 18) are **OVERRULED**. The Honorable Douglas E. Miller's Report and Recommendation (ECF No. 17) is **ADOPTED.**

The claimant's appeal of the Commissioner's final decision and request for a remand (ECF No. 1) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.[5]

The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED**.

/s/ JKW
Jamar K. Walker
United States District Judge

Norfolk, Virginia
August 19, 2026

[5] The Clerk is **DIRECTED** to terminate ECF Nos. 12, 15, which do not seek independent relief.